UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD SCOTT, | No. C 09-552 SI (pr) |
| Plaintiff, | **ORDER OF DISMISSAL** |
| v. | |
| CDCR SECRETARY TILTON; et al., | |
| Defendants. | |

## INTRODUCTION

Leonard Scott, an inmate at Mule Creek State Prison, filed a pro se civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

Leonard Scott filed an action last year in which he complained of acts and omissions that occurred at Mule Creek State Prison. See Scott v. California State Prison - Sacramento, Case No. C 08-5297 SI. That action was transferred to the Eastern District of California because it had been filed in the wrong venue. In his complaint in the present action, Scott complains of the same acts and omissions as those complained of in Case No. C 08-5297 SI (e.g., a problem during his transfer from California State Prison-Sacramento to Mule Creek on November 7, 2008), and adds some more claims. Only one of the additional claims in this action concerns acts or omissions that occurred within the venue of the Northern District of California.

Scott alleges that "San Quentin violated procedures in processing me at reception by not getting my archives file and giving me the right points and sending me to a level IV where I had two enemies." Complaint, p. 3. On the cover sheet for Exhibit A-1, Scott alleges that he was sent to High Desert State Prison, and states that a Marshall "contacted me twice to testify in giving them information on "Clarence 'Rusty' Tommalson" who had been on America's Most Wanted and had caused them too interfear with my 'criminal' case. And they placed me at HDSP with known enemies on my B-112 form." Complaint, Exh. A-1 cover sheet (errors in source).

At San Quentin, a summary of Scott's file was prepared on February 8, 2000, for Scott, who had arrived after being sentenced on or about January 4, 2000. Complaint, Exh. A-1 at 2/8/00 Institutional Staff Recommendation Summary. The summary noted in the "Casework Follow-Up" section that the "[r]eceiving institution should obtain and evaluate the CII/FBI printouts, obtain and evaluate prior incarceration records (C10415 and C54857) and follow-up on prior non-documented incarceration behavior." Id. The summary did not list any score in the "classification score" section, and did not state that Scott should have an "R" suffix in his classification.

After Scott had arrived at High Desert State Prison in 2000 or 2001, a correctional counselor did an "archive file review" for Scott based on his two former CDC prisoner numbers – numbers that had been assigned to him during his earlier prison terms. See Complaint, Exh. A-1 at 2/22/01 CDC-128B. The memorandum for that review shows that it was done on February 22, 2001 at High Desert, and listed several enemies he had when he had previously been in custody during the 1980s.

One of Scott's allegations pertains to an "R" suffix in his classification. An "R" suffix in an inmate's classification score indicates that he has a sex offense history. However, the "R" suffix was not put on Scott's records until February 27, 2001, and was done at High Desert State Prison rather than at San Quentin. See Complaint, Exh. A-2 at 2/27/01 classification chrono ( "committee also acts to assess an "R" suffix to subjects custody").

The complaint also includes allegations about a wide range of other problems that Scott has encountered in the last eight years at the several prisons in the Eastern District of California.

2

1 He alleges that he was assaulted at Pleasant Valley State Prison; was housed with an enemy at
2 Folsom State Prison; denied medical attention at Folsom State Prison; was housed with an
3 incompatible inmate, received an improper rule violation report, was put in a psychiatric unit and
4 received inadequate medical care at C.S.P. - Sacramento; and was separated from his property
5 when he was transferred from C.S.P. - Sacramento to Mule Creek State Prison.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

A.   The San Quentin Claims

Scott alleges that he received an improper classification score at San Quentin. This claim will be dismissed because a prisoner has no federal due process right to a particular classification score. Interests protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes in conditions relating to classification and reclassification do not implicate the Due Process Clause itself. See Hernandez v. Johnston,

3

833 F.2d 1316, 1318 (9th Cir. 1987) (citing Moody v. Dagget, 429 U.S. 78, 88 n.9 (1976)) (no constitutional right to particular classification). Deprivations authorized by state law that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e. give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." See Sandin, 515 U.S. at 477-87. Although California has created a regulatory scheme from which a protected liberty interest in classification and custody designation might arise, the liberty in question is not protected by the Due Process Clause because the deprivation of a correct classification or custody designation cannot be characterized as one of "real substance," i.e., it does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, or "inevitably affect the duration of [a] sentence," id. at 487. The complaint fails to state a claim for a due process violation because the allegedly incorrect classification score did not cause a deprivation of a liberty interest of real substance.

Although the imposition of an "R" suffix indicating a person is a sex offender might give rise to an interest protected by the Due Process Clause, see Neal v. Shimoda, 131 F.3d 818, 827-30 (9th Cir. 1997), this court need not decide whether it does because that was not part of any classification decision made at San Quentin. Scott's exhibit A-2 plainly shows that the "R" suffix was attached in 2001 at High Desert State Prison. For the reasons explained in the next section, the claims regarding events at other prisons in the Eastern District are not properly joined with the claim about the classification at San Quentin.

Scott also claims that someone at San Quentin transferred him to a facility where he had enemies. To state a claim for deliberate indifference to a prisoner's safety in such a context, the prisoner needs to allege that prison officials knew he had enemies on a yard and put him there with deliberate indifference to a risk of harm to him from other prisoners. See Farmer v. Brennan, 511 U.S. 825, 833 (1994); Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). The documents attached as Exhibit A-1 show that the San Quentin reviewer had not examined Scott's

4

archived files, and recommended that the receiving institution do it. Complaint, Exh. A-1 at 2/8/00 summary. That summary states that Scott was uncooperative during the interview, and Scott does not allege that he informed the interviewer of any enemy concerns. Scott's archived records were reviewed a year later and when he was at High Desert State Prison. Complaint, Exh. A-1 at 2/22/01 CDC-128B. It is not clear from the review in 2001 whether any of his enemies were at High Desert State Prison at the time, but even if they were, he has not alleged that anyone at San Quentin knew he had enemies at High Desert when he transferred to that facility. The complaint therefore does not state a claim for deliberate indifference to Scott's safety as to any act that occurred at San Quentin. Exhibit A-1 also includes a memorandum noting that he had a telephone call with a U.S. Marshal on September 20, 2000, but that took place at High Desert State Prison after he had left San Quentin and therefore is not probative of anything that occurred at San Quentin. Complaint, Exh. A-1 at 9/20/00 CDC-128B.

The court also notes that any claim about problems that occurred at San Quentin in 2000 are more than four years old and therefore likely are barred by the statute of limitations. Normally, the court would grant leave to amend for a plaintiff to attempt to allege facts showing that his claim is not time barred but that is not necessary here because the complaint is being dismissed for the separate reason that it fails to state a claim upon which relief may be granted as to the San Quentin claims.

B.      Dismissal Of The Other Claims For Improper Joinder

The several other claims asserted in the complaint about the many problems Scott has experienced in the last eight years at prisons in the Eastern District will be dismissed because they are not properly joined under Federal Rule of Civil Procedure 20(a) concerning joinder of claims and defendants. Rule 20(a) provides that all persons "may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Scott's claims concern problems ranging from disciplinary decisions to medical care

5

claims to property claims to assaults. The acts or omissions giving rise to these claims happened at prisons other than San Quentin, where acts giving rise to his classification claim occurred. And the complaint indicates the claims are against different defendants. These claims are dismissed because they do not (a) arise out of the same transaction, occurrence, or series of transactions or occurrences and (b) present questions of law or fact common to all defendants. The dismissal of the improperly joined claims means only that they cannot be pursued in this action – Scott is free to file a new action in which he asserts those claims. However, because all the acts and omissions occurred in prisons located in the Eastern District of California, he must file his action in that district rather than the Northern District of California.

## CONCLUSION

For the foregoing reasons, the complaint is dismissed without leave to amend. This dismissal is without prejudice to Scott filing an action in the Eastern District concerning any constitutional violations that occurred in prisons in that district. The clerk shall close the file.

IT IS SO ORDERED.

Dated: September 29, 2009

_____
SUSAN ILLSTON
United States District Judge